GREENWELL ET UX. *v.* AMERICAN
GUARANTY CORPORATION

[No. 383, September Term, 1970.]

*Decided May 12, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*James P. Salmon*, with whom were *Hal C. B. Clagett, Sasscer, Clagett, Channing & Bucher* and *Joseph A. Mattingly* on the brief, for appellants.

*Frank H. Weller, Jr.*, with whom were *Robert R. Winter, Ober, Grimes & Shriver* and *Wm. Aleck Loker* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

American Guaranty Corporation (American Guaranty) brought suit against Dr. and Mrs. Charles Greenwell in the Circuit Court for St. Mary's County to enforce the

Greenwells' guaranty of a lease of industrial equipment. From a summary judgment for $22,650.10 together with interest and costs entered against the Greenwells in favor of American Guaranty, the Greenwells have appealed.

American Guaranty is in the business of leasing equipment to industrial and commercial users, *Burton v. Tatelbaum*, 240 Md. 280, 213 A. 2d 875 (1965). In 1961, the Greenwells' son, Joseph Greenwell, who was president of American Cellular Corporation (later American Plastic Container Corp.) of Miami, Florida (American Plastic), arranged to lease from American Guaranty certain blow molding equipment which American Guaranty undertook to purchase from the manufacturer, The Producto Machine Company of Bridgeport, Connecticut, for use by American Plastic in the manufacture of plastic bottles.

The lease, which was executed by American Plastic on 17 July 1961, was for an initial term of five years, and as originally drawn, called for monthly payments of $979.17 and a security deposit in the same amount. On 23 August 1961, the lease was amended by adding to $45,-543.00, the original cost of the equipment, the sum of $1,148.00, consisting of freight charges of $648.00 and an amount of $500.00 attributed to the additional cost of a substituted component. This had the consequence of increasing the amount of the monthly rent and of the security deposit from $979.17 to $1,003.86. While the record is not entirely clear, it would seem that the security deposit was made at the time American Plastic signed the lease, and the first month's rent was paid on 1 September. The lease, as amended, was ultimately approved by American Guaranty on 13 December 1961.

As of the day when the lease was executed by American Plastic, the Greenwells had joined with their son Joseph in signing a form of personal guaranty which provided, in part: [1]

---

1. Although the guaranty was dated 17 July it is apparent that it was not signed by Dr. and Mrs. Greenwell until after 18 August, but before 24 August.

"In consideration of the execution and delivery of [the] lease * * * the undersigned, jointly and severally, hereby guarantee, promise, and agree with the said [American Guaranty], its successors and assigns absolute performance by [American Plastic] of all the obligations under the said lease and any supplementary schedules added thereto during the initial lease term specified and any renewals of said lease and supplementary schedules, and waive notice of the acceptance of this guaranty, waive right to any notice and demand, or either, in each case of any default by [American Plastic] under said lease and further agree that any extension or modification granted to [American Plastic] shall not release the liability of the undersigned."

The undertaking seems to have been ill-starred from the outset. The blow molder was put in operation sometime early in December of 1961, and could never be made to function properly. American Plastic got behind in the rent. On 15 December 1966, the machine was destroyed by a fire at American Plastic's plant.

In May, 1967, American Guaranty brought suit against the Greenwells seeking a recovery of rent due and owing from American Plastic under the lease in the amount of $50,885.92. A motion for summary judgment was filed with the declaration and there was appended the affidavit required by Rule 610. The Greenwells answered the motion for summary judgment and filed an affidavit and supplementary affidavit in which they relied principally on a failure of consideration and on the fact that American Guaranty had brought a similar suit against American Plastic as principal and Joseph Greenwell as co-guarantor in the United States District Court for the Southern District of Florida. The trial court granted American Guaranty's motion, then granted a rehearing, and struck the order granting summary judgment.

Almost two years later, American Guaranty filed a

certified copy of the District Court's judgment for $21,-086.87 with interest of $4,563.23 and costs of $173.11, entered on 11 March 1969 on a jury vedict that there had been a 30% failure of consideration, and renewed its motion for summary judgment. The Greenwells countered with a motion for summary judgment in their favor. The lower court denied the Greenwells' motion, granted American Guaranty's and entered judgment in favor of American Guaranty and against the Greenwells for $22,-650.10, this being the amount of the Florida judgment less $3,000 which had been received in reduction of it, with interest from 11 March 1969.

The Greenwells assign three reasons why we should reverse the action taken by the court below:

(i) The trial court should have granted the Greenwells' motion for summary judgment as a matter of law;

(ii) Assuming, for purposes of argument, that the Greenwells' motion for summary judgment should not have been granted, there was a disputed question of material fact which should have prevented the granting of American Guaranty's motion; and,

(iii) The trial court was in error in ruling that the Greenwells were bound by the verdict in the Florida case.

### (i)

*The trial court should have granted the Greenwells' motion for summary judgment as a matter of law.*

The Greenwells bottom this argument on the contention that once American Guaranty added freight charges of $648.00 to the cost of the equipment, and made a commensurate increase in the monthly rent, a material modification had been made to the lease without their knowledge or consent, which, as a matter of law, released them from liability under the agreement of guaranty. This is

a completely tenable argument which may be advanced by an uncompensated guarantor who has not consented to modification of his contract of guaranty, Restatement, *Security* § 128 at 340 (1941). See also, *W. B. Saunders Co. v. Ducker,* 116 Md. 474, 82 A. 154 (1911), which invoked the doctrine of *strictissimi juris,* and the discussion in *A/C Electric Co. v. Aetna Ins. Co.,* 251 Md. 410, 247 A. 2d 708 (1968).

It will be recalled that the Greenwells, in the agreement which they signed, waived their right to notice and demand in the event of default and further agreed "that any extension or modification granted to [American Plastic] shall not release the liability" of the guarantors. The Greenwells argue that the addition of the freight charge was not a modification granted to American Plastic, but rather a modification granted by American Plastic to American Guaranty, which was not encompassed by the terms of the consent.

We are inclined to share the view of the trial court that the addition of the freight charge was not a modification at all. Attached to the lease, and incorporated by reference, was a letter proposal from The Producto Machine Company to American Plastic dated 21 June 1961 quoting prices of the molding equipment which concluded: "TERMS To be arranged F.O.B. our plant floor Bpt. Conn. [Bridgeport, Connecticut]."

A somewhat similar contention was before us in *Gordon v. State National Bank of Bethesda,* 249 Md. 378, 239 A. 2d 915 (1968), where the Gordons, in August 1965, agreed that:

> "IN CONSIDERATION of a loan in the amount of $30,000 made or to be made * * * we * * * do hereby * * * guarantee * * * the prompt payment * * * of said note or notes * * * in whole or in part * * * "

A year later, the debtor borrowed $19,000.00 and then defaulted. In holding the Gordons liable, we quoted from

*Walton v. Washington County Hospital Ass'n*, 178 Md. 446, 450, 13 A. 2d 627 (1940) :

> " 'A contract of guaranty is a form of commercial obligation, which should be construed in furtherance of its spirit, without strict technical nicety, to promote liberally the use and convenience of commercial intercourse. The words of a guaranty should receive a fair and reasonable interpretation to effectuate the intention of the parties, and the circumstances accompanying the transaction may be considered in seeking the intention of the parties. The court should give the instrument that construction which will best accord with the intention, as manifested by the language in the light of all the surrounding circumstances, without stretching the words beyond their import in favor of the creditor or restricting them in aid of the guarantor.' "

and concluded :

> "If this test is applied to the instrument before us, it is obvious that the intent and purpose of the Gordons was to guarantee, until such time as they gave written notice that no further advances were to be made, any indebtedness which Frontiers might incur at the Bank up to a maximum principal sum of $30,000, whether the debt was evidenced by one note or several." 249 Md. at 384.

An analogous situation is present here. It is manifest that the agreement which the Greenwells signed was intended to give American Plastic a free hand in dealing with American Guaranty and that no modification of the terms of the arrangement would have relieved the Greenwells of an obligation which was intended to be without limit as to either duration or amount. See 38 C.J.S. *Guar-*

*anty* § 73 at 1238 (1943). The decision in *Plunkett v. Davis Sewing Machine Co.*, 84 Md. 529, 36 A. 115 (1897), relied on by the Greenwells, is only obliquely apposite because there, an uncompensated guarantor who had agreed that a sales agent's contract could be modified in writing as to terms, prices or territory, was discharged from his obligation when there was an oral modification of the contract.

### (ii)

*Assuming, for purposes of argument, that the Greenwells' motion for summary judgment should not have been granted, there was a disputed question of material fact which should have prevented the granting of American Guaranty's motion.*

In *Trustees of The Broadfording Church of the Brethren v. Western Maryland Railway Company*, 262 Md. 84, 277 A. 2d 276 (1971) we considered at some length the summary judgment procedure contemplated by Rule 610, and need go no further here than to reiterate that its purpose is to determine whether a trial is necessary when there is no genuine dispute as to a material fact.

The Greenwells urge that, based on an examination of the pleadings, the motions for summary judgment, and the answers thereto, there were two disputed material facts which should have precluded entry of summary judgment in favor of American Guaranty. The first is the substitution of an accumulator other than that originally ordered, at an additional cost of $500.00, when there was no proof that this had been ordered by American Plastic.

The short answer to this is that the accumulator was substituted as additional equipment under a supplemental schedule which then made it part of the equipment covered by the lease. The Greenwells would endeavor to avoid the impact of this by arguing that there is no proof that this was a substitution requested by American Plastic. In our view, the question whether the substitution was or was not ordered by American Plastic is not a ma-

terial fact. The simple answer is that American Guaranty's letter of 23 August 1961, advising American Plastic of the substitution, was formally accepted by American Plastic. Thereafter, American Plastic paid to American Guaranty the increased rent occasioned by the substitution.

Alternatively, the Greenwells would have us hold that the 23 August modification was not during the "initial lease term", since they take the view that the lease commenced on 12 December, when it was formally accepted by American Guaranty. Assuming, for the purpose of argument, that this contention is correct, the language of the lease itself, when read in conjunction with the guaranty, offers an entirely different basis upon which the guarantors may be held liable. Paragraph 2 of the "Terms and Condition of Lease" provides:

> "At any time the parties may subject addition [sic] equipment to this Lease by signing a schedule or order describing the additional equipment and the additional rent payable therefor, *which schedule shall thereupon be deemed to become a part of this Lease * * *."* (emphasis supplied)

Under the Agreement of Guaranty the guarantors "hereby guarantee, promise, and agree with the said Lessor, its successors and assigns absolute performance by the Lessee *of all the obligations under the said Lease * * *."* (emphasis supplied). If we take the language in its ordinary meaning, we can reach no conclusion other than that the addition of "and any supplementary schedules added thereto during the initial lease term specified" was not intended to limit or narrow the unequivocal obligation which the guarantors assumed, but if it has any meaning at all was intended to extend or broaden the guarantors' undertaking.

The second area in which the Greenwells conceive that a genuine dispute of a material fact may be found re-

lates to whether American Plastic gave American Guaranty written notice that the equipment was defective within 48 hours of its receipt as required by Paragraph 9:

> "Unless within 48 hours after receipt of the Equipment, LESSEE gives LESSOR written notice specifying any defect in or other valid objection to the Equipment, it shall be conclusively presumed, as between the LESSOR and the LESSEE, that the Equipment is acknowledged to be in good condition and that LESSEE has accepted and is satisfied that the Equipment constitutes the Equipment specified in the Lease."

Dwight D. MacFarlane, manager of collections for American Guaranty, in a supplementary affidavit filed in support of American Guaranty's motion for summary judgment, stated that on 29 November 1961, he had received a telefax message from American Plastic, advising that the equipment had been delivered; that no other notice had been received within 48 hours to the effect that the equipment was defective, and that during the period 1 January 1962 after the delivery of the equipment until 26 May 1965, American Plastic had made 24 rental payments totaling $18,591.39. While Joseph L. Greenwell, president of American Plastic, steadfastly maintained in his affidavits that the requisite notice had been given, the earliest letters proffered by American Plastic were that of 7 December 1961 to The Producto Machine Company, complaining of difficulties experienced in the preliminary run of the equipment and a letter of 9 January 1962 to American Guaranty, enclosing the first month's rent after the delivery of the equipment which acknowledged that there had been difficulties, but was optimistic in tone. Neither, of course, was within the specified period, but even if American Plastic had made a showing that it had given American Guaranty the requisite notice, it might not have won the day.

The principle which we cited in *John B. Robeson Associates, Inc. v. Gardens of Faith, Inc.*, 226 Md. 215 at 222-23, 172 A. 2d 529 (1961) is uniquely applicable here:

> "There are few principles of contract law better established, or more uniformly acknowledged, than that a party to an executory bilateral contract, who keeps the same in existence after a known breach by the other party and accepts further performance from the party who has committed the breach, waives the breach, in the absence of an assertion of his intention to retain the rights accruing to him as a result of said breach, assented to by the other party; and if the injured party thereafter does not make good his promises of performance, he is responsible for such failure. 3 Williston, *Contracts* (Rev. ed.), § 688, states it thus:
>
> > 'The principle is general that whenever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted but assented to.'

In Restatement, *Contracts*, § 309, we find:

> 'Where the duty of a party to a bilateral contract has been discharged by the failure of a condition to exist or to occur or by the actual or threatened nonperformance of a return promise, he is again subjected to the duty if he renders any further performance, or assents to the rendering by the other party of any further performance of a condition or promise beyond what is due as the exchange for performance previously rendered, pro-

vided that he renders or assents to such further performance

    (a) with knowledge of the facts establishing his discharge, or * * *.' "

### (iii)

*The trial court was in error in ruling that the Greenwells were bound by the verdict in the Florida case.*

We conclude that *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A. 2d 100 (1968) is clearly dispositive of this issue. There, we cited with approval *State v. Capital Airlines, Inc.,* 267 F. Supp. 298 (D. Md. 1967), which dealt with an identical issue: whether a prior judgment of the District Court of the District of Columbia was res judicata, despite a lack of mutuality of parties in that case. Judge (now Chief Judge) Northrop observed:

    " '* * * Indeed, the philosophical basis for the doctrine of collateral estoppel is that a party should have a full and fair day in court to be heard on the issue but should not be able to litigate that issue ad nauseam. There must be an end to litigation at some point. In view of the crowded dockets of the courts today, ancient principles must give way to principles based on today's realities so long as these new principles do not deprive a litigant of his day in court. In formulating a principle of law, a court does not sit in a vacuum. Rather, it must weigh the rights of an individual litigant with the rights of society. In coming to its conclusion, the court has taken into account not only the right of society to have its courts render justice as inexpensively as possible and the right of each litigant to have his day in court, but also the rights of other litigants who might have to wait to have their day in court because one litigant is allowed to litigate the same issue over and over again. Four questions must be answered in the

affirmative in order for the doctrine of collateral estoppel to be applicable. Three of them were formulated by Justice Traynor in *Bernhard,* supra, [*Bernhard v. Bank of America,* 19 Cal. 2d 807, 122 P. 2d 892 (1942)] 122 P. 2d at 894-895 "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"'" 249 Md. at 44-45.

On the record before us, it is palpably clear that the Greenwells not only knew of the Florida suit against American Plastic and its co-guarantor, but relied on its pendency to resist the first motion for summary judgment. They could have intervened, had they chosen to do so. Having decided not to do so, they cannot now relitigate the same question, 38 Am.Jur.2d *Guaranty* § 77 at 1083 (1968) ; *State Bank of Blue Island v. Benzing,* 383 Ill. 40, 48 N.E.2d 333 (1943) ; compare Restatement, *Security, supra,* § 139(2) at 372.

For the reasons stated, we find no basis to disturb the result reached below.

*Judgment affirmed; costs to be paid by appellants.*