Thomas Emmert BEALL, a/k/a T. Emmert Beall and Emmert T. Beall

v.

**KEARNEY & TRECKER COR-PORATION.**

Civ. No. 70–1303.

United States District Court,
D. Maryland.

Sept. 27, 1972.

Bernard M. Goldstein, Baltimore, Md., for plaintiff.

Joseph S. McCarthy, Rockville, Md., for defendant.

BLAIR, District Judge.

This action for breach of contract, arising under this court's diversity jurisdiction, is a sequel to a complex patent infringement suit which was recently decided by the Court of Appeals for the Seventh Circuit. Kearney & Trecker Corp. v. Giddings & Lewis, Inc., 306 F.Supp. 189 (E.D.Wis.1969), rev'd, 452

F.2d 579 (7th Cir. 1971), cert. denied, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). By election of the parties, the instant case was tried to the court without a jury.

The plaintiff, Thomas Emmert Beall, had been employed by the United States Patent Office from 1921 until his retirement on June 22, 1962. Upon retirement, he was approached by the defendant's president, Francis J. Trecker, and offered a position as a patent consultant. The conditions of employment were agreed upon and a contract was executed on August 1, 1962. By its terms, the employment contract was to continue in force for 5 years unless terminated by either party by July 31 of any year. During this 5-year period, Mr. Beall received many assignments from Elroy Wutschel, the defendant's chief patent attorney. Beall performed his duties satisfactorily and with his assistance, the defendant was able to secure the reissue of the Brainard patent for a mechanical tool changer on June 29, 1965. Thereafter, the plaintiff continued in the employ of Kearney & Trecker until the expiration of his contract on July 31, 1967. At that time, Trecker advised Beall in writing that Kearney & Trecker was "very pleased" with his services and it would like to renew the existing contract for an additional 2-year period. Mr. Beall accepted this offer.

Kearney & Trecker, in the meantime, had commenced an action against a competing tool manufacturer alleging that the company was infringing the patent which had been acquired with the assistance of Beall. During pre-trial discovery in that case, it was revealed that Beall had worked on the patent in question as both an examiner for the patent office and a consultant for the corporation. In an effort to preserve the validity of its patent, Kearney & Trecker relinquished all patent claims obtained with the assistance of Beall's services and, in addition, terminated Beall's contract of employment on August 15, 1968. His contract would not have expired until August 1, 1969.

In the patent infringement suit, the district court sustained the validity of Kearney & Trecker's patent on the theory that the company, by taking the aforementioned action, had relinquished any benefit resulting from the patent which was acquired with the assistance of Beall. The Seventh Circuit, in reversing, held that Beall's conduct was not only contrary to the official policy expressed in Patent Office Rule 341(g) but also violated the conflict of interest statute, 18 U.S.C.A. § 207. It further held that Beall's conduct in connection with the reissue rendered the entire Brainard patent invalid. As a direct consequence of this decision, Kearney & Trecker have incurred damages in excess of four million dollars.

Mr. Beall has continually asserted that he was not guilty of any impropriety and that Kearney & Trecker wrongfully terminated his contract. Thus, this action was commenced by Beall to recover the remainder of the compensation due under his employment contract as well as certain attorneys' fees and expenses which he claims were incurred as a result of the aforementioned patent litigation.

The defendant maintains that it was justified in discharging Beall from its employ prior to the expiration of his contract because of the impropriety of his actions in connection with the Brainard patent reissue. Although the contracts did not by their terms forbid conduct by Beall of the type alleged to justify termination, the court considers that the proscription of conduct inimical to Kearney & Trecker's interest was a term supplied by implication. The plaintiff, however, argues that the initial 5-year contract and the subsequent 2-year extension are legally independent entities. Thus, it is asserted that any misconduct which would justify termination of the extension agreement must have occurred after August 1, 1967, the date of that contract's extension. Since Beall's work on the Brainard patent occurred prior to that date, any misconduct during the first contract could not

justify termination of the second contract, so the plaintiff reasons. The plaintiff has been unable to cite any authority to support this proposition and this court, after extensive research, concludes that this argument is illfounded. *Cf.* Brown v. Dupuy, 4 F.2d 367 (7th Cir. 1924).

■ Since Mr. Beall's conduct which occurred within the original term of his employment contract is relevant to the issue of whether his employment was justifiably terminated, evidence on this matter which was accepted subject to a later ruling of this court is hereby admitted.

■ Kearney & Trecker attempted to raise the defense of res judicata without expressly pleading it as required by Rule 8(c) of the Federal Rules of Civil Procedure. However, since it appeared that both parties were prepared to address themselves to this issue, the court will overlook the defect in pleading and consider the merits of the arguments.

The major thrust of the defendant's case rests upon the assertion that since the Seventh Circuit, in Kearney & Trecker Corp. v. Giddings & Lewis, Inc., 452 F.2d 579 (7th Cir. 1971), found that Beall had transgressed the bounds of propriety, he was collaterally estopped from denying his wrongful conduct in this proceeding. This argument does not find support in authority.

■ The doctrine of collateral estoppel is a relative of the doctrine of res judicata. Res judicata will bar the parties to a suit from relitigating issues that have been or could have been adjudicated in a prior proceeding between them or their privies. At the heart of the doctrine is the public policy that all litigation must at sometime end and that once tried, issues shall be forever settled as between the parties. Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). Traditionally, this doctrine would bar litigation of issues only when there was mutuality of estoppel. That is, if the one taking advantage of the earlier deci-

sion would have been bound by it had it gone against him. Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942). However through judicial extension of the underlying principals, this doctrine has been relaxed so that in a proper case one may be collaterally estopped in the absence of mutuality. Presently, many jurisdictions, including Maryland, hold the view that once an issue is litigated the parties may be bound by that litigation for all purposes. Thus, one who was not a party may assert the results of a prior adjudication against all those who are bound by that decision. *See* Pat Perusse Realty Co. v. Lingo, 249 Md. 33, 238 A.2d 100 (1968). *See also* Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892 (1942), and cases cited therein at 892.

■ The defendant urges this court to extend the reasoning of these cases so as to allow Kearney & Trecker, a party to a prior litigation, to assert the results of that decision against Beall, who was not a party. Thus, according to the defendant's interpretation of the law, because the Seventh Circuit found that Beall's conduct was improper Beall is collaterally estopped from asserting the absence of wrong. Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Maryland v. Capital Airlines, 267 F.Supp. 298 (D.C., 1967); and Greenwell v. American Guarantee Corp., 262 Md. 102, 277 A.2d 70 (1970) are cited in support of this argument. This court, after a careful reading, finds all of the above cited authority clearly distinguishable from the instant case. In each of those cases, the party asserting the results of prior litigation was not a party to the former case but the party against whom the prior adjudication was asserted had been a party to or had asserted the results of that action. Here we have the opposite aspect of those factual situations. Beall was not a party to the patent litigation. The fact that the

Seventh Circuit's findings concerning his conduct were a determinal issue in finding against his employer does not estop him collaterally from asserting his claim in this case.

This court has searched in vain for any decision which supports the defendant's assertion that the Seventh Circuit decision estops Beall from ·denying any wrongdoing. Furthermore, this court does not believe any such decision could be rendered without violating the due process clause of either the Fifth or Fourteenth Amendments to the Constitution. It is fundamental that, at a minimum, due process of law requires that a person not be deprived of life, liberty, or property unless he has been afforded an opportunity to defend and protect those rights. In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) and cases cited at 273 n.31, 68 S.Ct. 499; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Mr. Beall, in the Seventh Circuit litigation, had no control over any aspect of the trial or appeal; he could not call witnesses in his own behalf, nor could he object to the admission of any evidence that might prove harmful to his interests. To nevertheless hold that Beall is bound by the decision in that case would be to disregard the most basic requirements of due process guaranteed each person by the Constitution of the United States. Therefore, since this court has concluded that the plaintiff may assert an absence of wrongdoing, it must now direct its attention to the issue of whether the employment contract was justifiably terminated.

▆ Mr. Beall having proved the existence of the employment contract in question, the burden falls upon the defendant to prove, by a preponderance of the evidence, that Beall's misconduct justified his premature discharge. *See, e. g.,* Farmer v. Arabian Am. Oil Co.,

285 F.2d 720 (2d Cir. 1960); Sawyer v. E. F. Drew & Co., 111 F.Supp. 1 (D.N. J.1953), aff'd, 209 F.2d 566 (3d Cir. 1954). To meet this burden, Kearney & Trecker introduced voluminous files and reports prepared by Mr. Beall in connection with the preparation and prosecution of several patent applications which related to matters that Beall had worked on while employed as an examiner for the Patent Office. This evidence is relied upon by the defendant to prove that Beall violated the conflict of interest statute, 18 U.S.C.A. § 207, and that he also ran afoul of the Patent Office Rules, 37 C.F.R. § 1.341(g). With respect to each of these arguments, the court concludes that the defendant, Kearney & Trecker, has failed to carry its burden of proof and therefore has not shown facts which would justify the termination of Beall's contract.

Section 207 of the Criminal Code of the United States provides in part that:

> Whoever, having been an officer or employee of the executive branch of the United States Government . . . after his employment has ceased, knowingly acts as agent or attorney for anyone other than the United States in connection with any judicial or other proceeding, application, request for a ruling or other determination, . . . in which the United States is a party or has a direct and substantial interest *and in which he participated personally and substantially as an officer or employee,* through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, while so employed, . . . .
>
>     *    *    *    *    *    *
>
> Shall be fined not more than $10,000 or imprisoned for not more than two years, or both . . . . [Emphasis added].

Thus, it is necessary for the defendant to prove more than that Mr. Beall was employed in the division of the Patent Office which had passed upon the validity of the Brainard patent. The conflict

of interest statute itself requires that the employee must have "participated personally and *substantially*" in the matter in question. Mr. Beall testified that he was employed as a primary patent examiner during the time the Brainard application was pending. He further testified that he did sign the formal notice of allowance of that patent. However, he testified that in most cases his signature was a ministerial act and that he did not know the nature of the document he was signing and that, with respect to the Brainard patent, his signature was affixed in a *"pro forma"* manner. A detailed examination of the Patent Office file, serial number 777122, for the Brainard patent, number 3099873, supports Beall's testimony that, with respect to this patent, he acted exclusively in a ministerial capacity.

Kearney & Trecker initially filed an application for a patent on "an improvement in a Shuttle Operated Tape Controlled Machine Tool" on November 28, 1958. This application contained 16 claims which were all rejected by the Patent Office on May 18, 1959 in a letter which was dictated by R. H. Eanes and which was signed by the plaintiff, T. Emmert Beall, as examiner. Patent Office File No. 777122 at 95–96. The file discloses that Kearney & Trecker amended the original application on November 11, 1959 to add four new claims and to submit reasons why the initial 16 claims should be allowed. The Patent Office, in a response dated July 13, 1960, dictated by R. H. Eanes and signed by William W. Dyer, Jr. as examiner, rejected all of the defendant's claims. *Id.* at 111–16. On January 18, 1961, Kearney & Trecker once again amended the Brainard application and requested reconsideration of the prior rejected claims. This time, the Patent Office, in a letter which was written and signed by Eanes, allowed some of the defendant's claims but rejected others. *Id.* at 141. Kearney & Trecker then amended their application for the third time and, in a letter written by Eanes and signed by Beall as examiner,

some additional claims were allowed and the remainder were finally rejected. This last letter was mailed on June 25, 1962, three days after the plaintiff retired from the Patent Office. *Id.* at 152–54.

■ The contents of the official file indicate that the only contact Beall had with the Kearney & Trecker application was in his ministerial capacity as the primary examiner. The fact that all correspondence from the Patent Office was written by Eanes indicates that he and not Beall was the patent official responsible for evaluating Kearney & Trecker's claims. The fact that of the four letters mailed from the Patent Office only two bore the signature of Beall further indicates that his signature was affixed to comply with the internal policies of the Patent Office and not to signify that he had personally evaluated the patent application. This evidence is legally insufficient to establish that Beall had "personally and substantially" participated in the evaluation of the Brainard patent. Thus on the evidence before it in this case, the court is unable to conclude that Kearney & Trecker has shown that Beall violated the conflict of interest provisions contained in 18 U.S. C.A. § 207.

The conclusion reached by this court is opposite to the one reached by the Seventh Circuit on the same issue. A comparison of the evidence available to each court, however, will illustrate the reasons for this difference. As was discussed more fully above, the only substantial evidence before this court relevant to the question of whether Beall had "personally and substantially" participated in the evaluation of Kearney & Trecker's patent was that two out of four pieces of Patent Office correspondence bore his signature. The Seventh Circuit, on the other hand, had before it evidence that in December of 1959, Beall had personally visited the Kearney & Trecker plant in Milwaukee to observe a demonstration of the machine for which the patent application had been made. 452 F.2d at 585. Furthermore, in the

984

Seventh Circuit case, there was evidence that Beall had had several discussions with the defendant's patent counsel in relation to the then pending application, and that changes in the application were made by Kearney & Trecker at Beall's suggestion. 452 F.2d at 585–586. It was from this evidence, which was not presented in the instant case, that the Seventh Circuit was able to find that "Beall participated personally and directly in the deliberations within the Patent Office which preceded the issuance of the original Brainard patent" and that "[Beall's] signature on the Notice of Allowance was not a mere ministerial act." 452 F.2d at 590.

■ Kearney & Trecker's second argument asserted to justify terminating the employment contract is that Beall violated Patent Office Rule 314(g), 37 C. F.R. § 1.341(g). The first subsection of that rule provides that a former examiner may not register to practice before the Patent Office

> unless he undertakes (1) not to prosecute or aid in any manner in the prosecution of any application pending in any examining group during his period of service therein. . . .

The evidence presented in this case proves that Beall was the primary examiner for Division 13 and that the Brainard patent was pending in that division when Beall retired from the Patent Office. Thus, when Beall chose to aid in the prosecution of that patent he relinquished his right to register to practice before the Patent Office. However, in the absence of such registration, a former examiner's engagement in the proscribed activities does not appear to violate any Patent Office rule which has been made known to this court. The Seventh Circuit, after considering all of the evidence that was before it could only conclude that Beall had violated the "underlying policy that former examiners should not perform the kinds of service that would make them ineligible for registration." 452 F.2d at 592. While this enunciation of the Patent Of-

fice policy is not disputed, this court is unable to equate the transgression of an unwritten policy with the wrongful conduct necessary to justify a premature termination of an employment contract. Since the Brainard patent was issued on August 6, 1963 and since Beall did not register to practice before the Patent Office until 1965, it is axiomatic that he could not have aided in its prosecution while registered before the Patent Office. With respect to this subsection, the court concludes that Beall has not engaged in any conduct that would justify Kearney & Trecker's termination of his contract.

The second subsection of the Rule which the defendant relies upon to justify its actions provides that a former examiner may not register unless he undertakes

> not to prepare or prosecute nor to assist in any manner in the preparation or prosecution of any application of another filed within two years after the date he left such division, and assigned to such division, without the specific authorization of the Commissioner.

Since Kearney & Trecker seek to rely upon this subsection as a defense to a breach of contract action, it is incumbent upon it to prove two things. Primarily it must prove that after Beall registered to practice before the Patent Office, he assisted Kearney & Trecker in the prosecution of an application which had been filed in Division 13 prior to June 22, 1964. Secondly, the defendant must prove that if Mr. Beall had engaged in such conduct he did so without first obtaining the specific authorization of the Commissioner of Patents.

Kearney & Trecker have failed to meet their burden of proof on either element. Absolutely no evidence was introduced to prove that after Beall had registered he had assisted Kearney & Trecker with any matter that had been filed in Division 13 prior to June 22, 1964, the second anniversary of his re-

tirement from the Patent Office. Furthermore, even if Beall had engaged in such activity there was no proof that he did not have the authorization required. While it is true that Beall testified that he was asked to answer charges that he had violated the Patent Office Rules, the results of any proceeding have not been made known to this court. Thus, this court must conclude that the Patent Office did not consider Beall's conduct to be violative of any registration rule or regulation.

■ Since the court has concluded that Kearney & Trecker failed to carry the burden of proving conduct on the part of Beall that would justify his discharge, the only issue remaining is the amount of damages to which the plaintiff is entitled. Beall has claimed as damages the amount of salary he would have received had he continued in Kearney & Trecker's employ. The plaintiff is clearly entitled to recover the amount of $833.33 per month for 11 months or $9,166.63, with interest from the respective dates due. The plaintiff additionally, as compensation owed him under the extension agreement, claims $11.94 for telephone calls made during the month of September and $210.00 for two round trips from Bethesda, Maryland to Milwaukee, Wisconsin. Since Beall asserts that he should recover this money he must prove that he incurred these expenses pursuant to the carrying out of his obligations under the employment contract. No evidence was introduced to show that the telephone calls were related to the performance of Kearney & Trecker's business. The fact that they were made shortly after Beall was notified of his discharge suggests that the calls were related to the termination of the contract and not to work performed for the defendants. Likewise, the expenses incurred by Beall and his attorney, Arthur Hilland, on their trip to Milwaukee were related to the dispute that had arisen between the parties and not to work performed for Kearney & Trecker. Thus these two claims must be rejected.

■ Beall's claims for the attorneys' fees he incurred present a more difficult question. His theory of recovery appears to be that he retained both Arthur Hilland and his son, Tom Beall, Jr., to represent him so that he could aid Kearney & Trecker in their then ongoing patent litigation. The testimony of Arthur Hilland, however, seems to indicate that he was retained at first because of the termination of Beall's contract and then he continued to represent Beall during the patent litigation so as to be able to protect Beall if he became a party to any other proceedings. Hilland also testified that he consulted Tom Beall, Jr. on various patent matters so that he could be prepared to watch out for Beall's interests and that he attended two depositions taken of Beall as a witness in the patent litigation. Tom Beall, Jr. testified that he had acted as a "translator" so that Hilland could better understand the intricacies of patent law. He also stated that he had assembled his father's records which had to be produced at his deposition pursuant to a subpoena duces tecum.

This evidence does not to this court's satisfaction meet the burden of proving that Beall consulted his attorneys for any reason other than to protect his own interests. The most logical inference which can be drawn from this testimony is that Beall, upon being notified that his contract had been terminated, consulted Arthur Hilland. To resolve the dispute, both Hilland and Beall traveled to Milwaukee to meet with Kearney & Trecker officials. When the reasons for the termination were fully understood, Beall realized that he might have to defend himself against a criminal charge of violating the conflict of interest law as well as having to defend his registration to practice before the Patent Office. It was for these reasons, and not to advance Kearney & Trecker's trial position in the patent litigation, that both Hilland and Beall, Jr. were retained. This being the case, Beall may not recover the amount he expended for attorneys' fees.

The court's findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P., are set forth herein even if not expressly so characterized. Judgment in accordance with this opinion will be entered separately.