COUCH, Personal Representative of the Estate of
James E. Couch v. WRIGHT et al.

[No. 84, September Term, 1972.]

*Decided December 8, 1972.*

The cause was argued before Barnes, McWilliams,
Singley, Smith and Levine, JJ., and Charles E. Moy-
lan, Jr., Associate Judge of the Court of Special Ap-
peals, specially assigned.

*Robert C. Handwerk,* with whom was *Samuel F. Ianni*
on the brief, for appellant.

*Richard J. Clark,* with whom was *Edward S. Digges* on
the brief, for appellees.

McWilliams, J., delivered the opinion of the Court.

James and Elizabeth Couch [1] became husband and wife in October 1935. They parted in April 1958. In March 1962, "wish[ing] to terminate the protracted litigation [764A Equity] which . . . [had] been in progress [between them] for quite some time in . . . [the] Circuit Court for Charles County" they agreed, in writing, that "in addition to . . . conveying . . . their property [about 45 acres] to John H. Mitchell, Trustee, upon the terms and conditions set forth therein" James would dismiss certain other pending litigation and make stated cash payments to Elizabeth, and that Elizabeth, upon the receipt of certain of these payments, would "proceed immediately to obtain an absolute divorce" at her own expense, waiving past, present and future support for herself and her three children. She agreed further that upon the "signing of the final divorce decree" she would release any and all judgments she held against James and that she would ask the court "to dismiss any contempt proceedings and suspend any sentences . . . pending therein." It was agreed also that she would "have the exclusive custody" of the children and that James would have no rights in respect of visitation. It is this agreement, signed, incidentally, by their attorneys, which is the nub of the present dispute. The deed to John H. Mitchell was executed by James and Elizabeth at or about the same time the agreement was signed. While the deed is not a part of the record Elizabeth says the word "trustee" had been deleted when she signed it.

In September 1964 John H. Mitchell and his wife conveyed the 45 acre tract to Elizabeth. Early in 1965 Elizabeth filed a bill of complaint in the Circuit Court for Charles County charging James with numerous adulteries and asking for a divorce *a vinculo,* custody of the infant children and an allowance for their support. In August of that year the chancellor, Bowen, J., granted the di-

---

1. James died 26 June 1970. His widow, the appellant, became his wife on 10 March 1966. Elizabeth, one of the appellees, has remarried and is now known as Elizabeth Esther Wright. Katherine S. W. Mitchell, the other appellee, is the widow of John H. Mitchell, Esq., who died in January 1971.

vorce, awarded Elizabeth the exclusive custody of the children and although he charged *her* with their maintenance and support he ordered James to pay her $50 per week for the support of the children. He allowed a fee of $250 to her counsel. Her right to receive alimony was "reserved for future determination." James moved to modify the decree shortly after its passage. In his motion he referred to the agreement of March 1962

"... providing for [a] property settlement, alimony and maintenance, under the terms of which ... [he] agreed to convey all interest in a valuable tract of farmland containing 45 acres ... the result [purpose] of said agreement being to vest in ... [Elizabeth] the exclusive title to said property .... That on the same date ... [he] joined in a deed ... to John H. Mitchell ... and for the further purpose of carrying the intention of the parties to said agreement into effect ... Mitchell ... conveyed said property to ... [Elizabeth] vesting her with the unencumbered and exclusive fee simple title to said real property ...."

James's motion came on for a hearing before Judge Bowen on 24 September 1965 and about a week later he amended the decree of 4 August by reducing the support payments from $50 to $45. He further ordered, adjudged and decreed

"... that all judgments entered against the Defendant arising out of the suit of Elizabeth E. Couch vs. James E. Couch, same being Case 764A Equity of the Circuit Court for Charles County, be, and they are to be satisfied of record, by virtue of the provisions of a certain Agreement executed by the parties on March 28, 1962, and that a new judgment in the amount of $500.00 representing the unpaid balance under said Agreement be entered against the Defendant; and that upon payment of the counsel

fee of $250.00 ordered to be paid by the Defendant to Edward S. Digges, Solicitor for the Plaintiff, a credit of $250.00 shall be allowed the Defendant on account of said judgment for $500.00.

"Finally, it is ADJUDGED AND DECREED that the right of the Plaintiff to receive alimony in the future is stricken from the Decree heretofore entered in the premises, the Court having determined that the Plaintiff is not entitled to receive alimony in the future."

In May 1967 Elizabeth sought to have James "adjudged in contempt" for his failure to make the support payments. In July Judge Bowen passed the order which follows:

"Upon consideration of the pleadings filed herein and both parties being represented by counsel, it is this 17th day of July, 1967, by the Circuit Court for Charles County, Maryland,

"ORDERED, that James E. Couch has purged himself of contempt of this Court, and further,

"ORDERED, that the arrearage in child support payments found to be due after credit for all payments made by James E. Couch including a payment of $1400.00 on June 28, 1967, is $2170.00, and it is further,

"ORDERED, that the arrearage be paid at the rate of $60.00 per month in advance commencing on the 1st day of July, 1967, and continuing on the 1st day of each month thereafter until paid, and it is further,

"ORDERED, that support payments are awarded in the amount of $60.00 per month as to Joyce Linn Couch to be paid to Elizabeth E. Couch starting on the 1st day of July, 1967, and continuing the 1st day of each month thereafter until she is emancipated or reaches her majority and it is further,

"ORDERED, that the support payments for Jerry E. Couch and Linda Lou Couch be discontinued since they are now emancipated and self-supporting."

In mid-September 1968 James filed a bill of complaint against Elizabeth in which he recited their marriage, the subsequent divorce, and the agreement of 28 March 1962. He alleged that "pursuant to the agreement and while . . . [he] was in jail for non-support," the property was conveyed to Elizabeth. He went on to allege that he had "lived up to the agreement" in every respect but that Elizabeth "by seeking attorney's fees for the divorce proceeding . . . [and] child support payments . . . [had not] lived up to" it. "Any consideration there might have been for the conveyance . . . [he added] was inadequate." He asked the court to set the conveyance aside or to reform it "to reflect a proper consideration."

Elizabeth, who had remarried, demurred to the bill of complaint. The demurrer came on for a hearing before Judge Bowen on 12 December 1968. At the conclusion of the hearing he sustained the demurrer without leave to amend. Maryland Rules 345 e, 373 d. James did not appeal.

The bill of complaint, the subject of this appeal, was filed early in February 1970. Again James recited the 1962 agreement, the divorce, the deed to John H. Mitchell and the deed from Mitchell and his wife to Elizabeth. He alleged, as he did in September 1968, his full performance of the terms of the agreement and Elizabeth's failure in this regard. In his prayer for relief he asked the court "to impress a trust upon the real property" to the extent of the support money ($6,500) he had been made to pay, to set the conveyance aside, to decree specific performance of the 1962 agreement, and "in the alternative" to have "a money judgment." In 1968 his bill of complaint was against Elizabeth only. The bill in the case at bar is against both Elizabeth and the Mitchells.

In their answer to the bill of complaint the respondents recited the result of the 1968 action and asserted the defenses of laches and res judicata. The case came on to be heard before the chancellor, (James Craik) Mitchell, J., on 15 March 1972. All documentary matter was stipulated by counsel. The appellant, James's widow, testified in respect of a few peripheral matters and upon the conclusion of her testimony counsel rested her case. Whereupon Judge Mitchell granted the motion of Elizabeth and Katherine S. W. Mitchell to dismiss. It is from his written order, filed the same day, that this appeal was taken.

In the court below James's solicitor, responding to the defense of res judicata, advanced the notion that the (1970) bill of complaint "raises issues and points which were not in controversy in the prior (1968) litigation." The Mitchells were not parties to the prior litigation, he says, and there "are additional facts . . . which give rise to different claims and demands." We have not found in the present bill of complaint, nor have counsel shown us, any "additional facts." As we see it James simply used more words to relate the same facts. Nor do we see any "different claims and demands." We see only an elaboration of what is essentially the same relief prayed for in 1968. The inclusion of the Mitchells as respondents lacks significance.

In this Court the appellant has shunned any mention of res judicata, perhaps because of a late apprehension that, for him, it is an impenetrable thicket, as indeed it is. Chief Judge Hammond laid it all out in *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 45, 238 A. 2d 100 (1968), where, in concluding his exhaustive discussion, he said, for the Court:

> "Perusse, in its suit against Ted [Lingo], had its full day in court and full opportunity to win on its claim . . . . Its claim was decided against it. There can be no doubt that it sought to relitigate that precisely identical issue in the at-

tachment against Elizabeth [Lingo—separated from her husband Ted]. Public policy against repetitive identical litigation, which underlies the rule of res judicata, applies here with logic and force to provide that Perusse's rights were satisfied by having had its day in court on an issue, and that it is not entitled to another day in court against a particular defendant on that issue."

*Perusse* has been followed here, *Greenwell v. American Guaranty Corp.*, 262 Md. 102, 113, 277 A. 2d 70 (1971), and the cases therein cited, and it has been cited with approval by the Supreme Court, *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U. S. 313, 326, 28 L.Ed.2d 788, 91 S. C. 1434 (1971).

Since *Perusse* is clearly dispositive of this appeal we shall not undertake a discussion of the other contentions presented in the briefs and at argument.

*Order affirmed.*
*Appellant to pay the costs.*