# PAT PERUSSE REALTY COMPANY
## *v.* LINGO

[No. 97, September Term, 1967.]

*Decided February 15, 1968.*

The cause was argued before HAMMOND, C. J., HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*H. Hughes Spragins,* with whom were *Tomes, Spragins, Mc-Donald & Sincoff* on the brief, for appellant.

*E. Richard McIntyre,* with whom were *Kardy, Brannan & Neumann* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The Maryland Reports are a repository of many suits by real estate brokers for unpaid commissions; mostly they have turned in varying aspects on whether the broker had procured a purchaser ready, willing and able to buy. The present appeal also turns on this point, albeit in a way that has not heretofore presented itself.

Ted Lingo and Elizabeth, his wife, owned their residence in Burning Tree Estates in Montgomery County. Because their marriage was on the rocks—a divorce was in the offing—they decided to sell it. The contract they both signed provided that the broker, the appellant, Pat Perusse Realty Company (Perusse), was to receive $3,300 as a commission on the agreed sales price of $33,000. Mrs. Lingo, who had moved from Maryland to Virginia, refused to consummate the sale. The broker sued both Ted and Elizabeth in the Circuit Court for Montgomery County. Ted was served; there were two non-ests as to Elizabeth. Perusse learned that a Maryland resident owed Elizabeth money and issued an attachment. Thereafter Perusse, having mailed to Elizabeth advices as to the pendency and trial of the suit, elected to proceed against Ted. Judge Mathias determined that there had been offered no proof that Perusse had procured a ready, willing and able buyer. There was no appeal.

Later, Perusse attempted to collect its claimed commission in the attachment against the debtor of Elizabeth. Her stated defense was res judicata on the ground that Perusse's only claimed right to recover against her was exactly the same as had been its claimed right to recover against Ted, and since Judge Mathias had decided it had no right to recover against Ted, this conclusively determined it had no right to recover against her.

The basic rule of res judicata is that facts or questions which were in issue in a previous action and were therein determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties or their privies even though the subsequent suit takes a different form or is based on a different cause of action. *Sterling v. Local 438, etc.,* 207 Md. 132; *Snodgrass v. Stubbs,* 192 Md. 287; *De Maio v. Lumbermens Mutual,* 247 Md. 30.

A corollary of this rule has been the theory of mutuality— that estoppels must be mutual and one (as it happened a plaintiff in the second suit) who himself was not bound by the prior judgment cannot assert res judicata against him to whom it was adverse. *Groshon v. Thomas,* 20 Md. 234.

The rule of mutuality always has had exceptions, modifications and extensions, as *Cecil v. Cecil,* 19 Md. 72, 79, recognized. Having said in that case what *Groshon* repeated, that estoppels must be mutual and bind and operate on both parties and their privies to be applicable, and may be used neither by nor against strangers, the Court added:

> "Justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that having been once so tried, all litigation of that question, and between those parties, should be closed forever. It is also a most obvious principle of justice, that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger, he may well be held bound. Under the term parties, in this connection, the law includes all who are directly interested in the subject matter, and had a right to make a defense, or to control the proceedings and to appeal from the judgment. This right involves also the right to adduce testimony and to cross-examine the witnesses on the other side. Persons not having these rights, are regarded as strangers to the cause. But to give full effect to the principle by which

parties are held bound by a judgment, all persons who are represented by the parties, and claim under them, or in privity with them, are equally concluded by the same proceedings."

The wall of mutuality never having been solid, the likely has happened and courts have gradually widened the breaches. In *Curtis v. Baptist Union Ass'n*, 176 Md. 430, 437, the Court reiterated the applicability of the rule of mutuality but quoted with approval 34 C. J. *Judgments* § (1405)—2 as follows:

" 'This rule, that there must be a substantial identity of parties as well as of the subject matter, is based on the fundamental principle that no man can be deprived of his property except by due process of law, a principle which in the United States has been embodied in the federal constitution and in the constitutions of the several states. In applying the rule the courts have allowed themselves a good deal of latitude, observing the spirit of it rather than the letter, and there are some well recognized exceptions to or modifications of it.' "

In *Williams v. Messick*, 177 Md. 605, an individual defendant who was the majority stockholder and manager of a corporation defended a suit seeking a receiver for the corporation by asserting that the identical issues had previously been litigated in a suit directly against the corporation. The Court of Appeals went outside the record and, on a point not raised or argued, assumed mutuality by assuming that the individual defendant had actually controlled the defense of the first suit because he was the majority stockholder and manager of the corporation.

In *Baker v. Cooper*, 166 Md. 1, 13, Judge Parke, for the Court, held that a Maryland resident, the sole distributee of a Maryland intestate, was sufficiently represented by an ancillary administrator appointed in Delaware against whom a claimant had obtained a judgment for money due him by the intestate, to require the Delaware judgment to be given effect in Maryland against the distributee. The Court said: "So, under the term

'parties,' all persons who are represented by the [actual] parties, and claim under them, or in privity with them, are equally concluded by the same proceedings." See also *Myers v. Gordon,* 165 Md. 534; *Ugast v. LaFontaine,* 189 Md. 227, 232; *Keitz v. National Paving Co.,* 214 Md. 479, 500-03.

Other jurisdictions recently have made further breaches in the wall of mutuality. An early and leading one was the decision in the Delaware case of *Coca-Cola Co. v. Pepsi-Cola Co.,* 172 A. 260 (Sup. Ct. Del. 1934). The Court there examined the rule of mutuality and the exceptions based on privity, derivative connection or liability over (see Restatement *Judgments* §§ 89, 95 and 96 (1942)) and concluded that the case before it— one in which the plaintiff had previously unsuccessfully litigated as complainant the identical issue on which its present suit was based and there was no relationship between the prior defendants and the present defendant—did not come within any exception theretofore recognized. The Court said (at page 263) :

"The classification now considered must, however, be subdivided, for it would seem that two distinct principles are involved

(a) Where the plea of res judicata is raised by a party to the prior suit against one who was not such a party;

And

(b) Where the plea of res judicata is raised by one not a party to the prior suit against one who was such a party.

"(a) This first class of cases gives full force and scope to the historical reason of the requirement of mutuality, viz., that no person should be deprived of his property without due process of law. The person against whom the plea is made was not a party to the former proceeding and there is no liability over either way with any person that was a party to the first suit. There is no privity, if privity be given its generally accepted meaning of having 'mutuality or successive relationship to the same right of property.' Questions under this heading could often arise when two joint

tort feasors are successively sued by the same plaintiff. A holding that a judgment against the first would be res judicata as to the second could be sustained on no sound principles.

"(b) A very different situation arises in the case where res judicata is pleaded by one not a party to the first suit against one who was such party. This is our present case.

"It is quite apparent that a direct and decisive conflict now arises between the two principles; of requirement of mutuality of estoppel on the one hand, and, on the other, the basic principle of res judicata, viz., the limitation to a party to one full and free opportunity to try the merits of his case.

"The present defendant pleading res judicata was not a party to the former proceeding and the judgment in the former proceeding did not bind it so there is no mutuality. The present plaintiff, against whom the res judicata is pleaded is alleged to have been the unsuccessful plaintiff in the former proceedings where the issues were alleged to have been identical with those here involved. We are not now passing upon the actual existence, as a fact, of the identity of the issues in the two proceedings, for that identity must be proven. But assuming the identity of the issues, we are of the opinion that a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one."

See *Zdanok v. Glidden Company, Durkee Famous Foods Division,* 327 F. 2d 944, 954-55 (2d Cir. 1964), wherein Judge Friendly, speaking for himself, Judge Waterman and Chief

Judge Lumbard, in applying res judicata where there was no mutuality, said:

"'This doctrine of the need for mutuality of estoppels, criticized by Bentham over a century ago as destitute of any semblance of reason, and as 'a maxim which one would suppose to have found its way from the gaming-table to the bench,' ibid. fn. 14, has been much eroded in recent years. Perhaps the leading federal decision is Judge Hastie's in Bruszewski v. United States, 181 F. 2d 419 (3 Cir.), cert. denied, 340 U. S. 865, 71 S. Ct. 87, 95 L. Ed. 632 (1950), which this court followed in Adriaanse v. United States, 184 F. 2d 968 (2 Cir. 1950), cert. denied 340 U. S. 932, 71 S. Ct. 495, 95 L. Ed. 673 (1951). We see no purpose in multiplying citations since it is recognized that the widest breach in the citadel of mutuality was rammed by Justice Traynor's opinion in Bernhard v. Bank of America, 19 Cal. 2d 807, 811-813, 122 P. 2d 892, 894-895 (Calif. 1942). Having explained why 'The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted,' and that there is 'no compelling reason * * * for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation,' he said:

'In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?' "

There is a similar holding (applying the law of Virginia as the court thought the highest Court in Virginia would declare it to be) in *Graves v. Associated Transport, Inc.*, 344 F. 2d 894 (4th Cir. 1965), and in *United States v. United Air Lines, Inc.*, 216 F. Supp. 709, 725-29 (D. Nev., E. D. Wash. 1962),

aff'd *sub nom., United Air Lines, Inc. v. Wiener,* 335 F. 2d 379 (9th Cir. 1964), *cert. dismissed,* 379 U. S. 951 (1964). Other cases reaching the same conclusion include *Gammel v. Ernst & Ernst,* 72 N. W. 2d 364 (Minn. 1955); *Tezak v. Cooper,* 164 N. E. 2d 493 (App. Ct. Ill. 1960); [1] *Crosland-Cullen Company v. Crosland,* 105 S. E. 2d 655 (N. C. 1958); *Israel v. Wood Dolson Company,* 134 N. E. 2d 97 (N. Y. 1956); *Desmond v. Kramer, et al.,* 232 A. 2d 470 (Union County Ct. N. J. 1967). *See* 1 Freeman, *Judgments* (5th Ed. 1925), §§ 428, 429, 572; *Developments in the Law—Res Judicata,* 65 Harv. L. Rev. 818, 862-64 (1952); [2] Note, *The Mu-*

---

1. The Court (at page 496) said of the Coca-Cola, Bernhard and Gammel cases:

"These cases hold that if a plaintiff tries a particular issue as against one defendant and there is a judgment adverse to plaintiff, then public policy prevents plaintiff from retrying this identical issue as against other defendants even though there is no privity as between the various defendants. These decisions are persuasive in the absence of Illinois authority on that specific point and, in view of the fact that the court had already found adversely to plaintiff on the issue of participation insofar as the Tavegias were concerned, prevent plaintiff from retrying this identical issue as against the defendants Kreml and Cooper."

2. As pertinent to this case, the article states (at pages 862-64):

"(a) *Mutuality.*—Because of the due process requirement of a hearing, strangers to an action normally cannot be bound by its result. Courts long assumed that the corollary must be true—if strangers are not bound by a judgment, they cannot obtain the benefit of it. This conclusion has been frequently expressed as the requirement of mutuality of estoppel.

\* \* \*

"(b) *Dissatisfaction with Mutuality.*—There has been a growing recognition that rigid adherence to mutuality tends to defeat what is probably the major policy underlying res judicata—that litigation be brought to an end. Hence, the emphasis—far more perceptible in dicta, however, than in actual holdings—is increasingly being put on the question whether a party has had his day in court on an issue, rather than on whether he has had his day in court on that issue as against a particular litigant.

"The attempt by a stranger to rely upon a prior judg-

*tuality Requirement of Res Judicata in Virginia,* 41 Va. L. Rev. 404 (1955); Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan. L. Rev. 281 (1957); Currie, *Civil Procedure: The Tempest Brews,* 53 Cal. L. Rev. 25 (1965); and *Res Judicata: The Shield Becomes a Sword,* Duke L. J. 402, 404 (1964).

Maryland has, in at least two instances, given hint that in a proper case the requirement of mutuality might not be insisted upon. In *Kold v. Swann,* 68 Md. 516, the Court of Appeals had in a previous case decided the only question at issue — whether a church had good title to the whole of a two-acre lot it had bought to use as a graveyard—in favor of the church. Later Swann bought a building lot carved out of the two-acre tract and bargained to lease it to Kolb. Kolb refused to go through with his bargain and the matter again came to the Court of Appeals, which said (at page 520):

> "We may concede for the sake of the argument, that technically and strictly speaking, this suit is not *res judicata,* because the parties are different, and the present parties should not be held conclusively bound by

ment in a subsequent action involving a party to that judgment may take any of the following forms:

"(1) *Use of the Judgment Defensively against the Plaintiff in the Prior Action.*—An almost universal exception to the requirement of mutuality is found where the liability of the defendant in the later action is based solely upon a culpable act of another. Where the immediate actor has already been found not liable, it has seemed unfair to permit further litigation which might result in liability being imposed upon the defendant, despite the fact that the jury may have erred in the first suit.

\* \* \*

"Such use of collateral estoppel [can be justified] \* \* \* since the plaintiff has had his day in court on the issue in a forum of his choosing, [and therefore] litigation should come to an end. Logically, this rationale would extend application of collateral estoppel to any subsequent suit involving the same issue where the plaintiff seeks to impose liability upon a new adversary. \* \* \* A growing minority of courts \* \* \* have gone to the logical extreme." (Footnotes omitted.)

the decision in that case in which they had no opportunity to be heard. We may also concede that the judgment in that case is not what may properly be termed a judgment *in rem* and binding on the world; we may also further concede the power of the Court to reverse its own decision. But notwithstanding all this, we think that both sound reason and the authority of adjudged cases, will amply justify us in a refusal to reopen this question of the title of the grave yard."

The Court said (at page 522) that in *Hammond's Lessee v. Inloes,* 4 Md. 138, 166, the Court there stated:

"If as a general rule upon principles of judicial propriety, and in view of the importance of having the law fixed and certain, a court respects its own decisions even in analogous cases, there would seem to be more reason for adhering to them where the facts are the same, though between different parties."

In the *Messick* case, to which we referred earlier (wherein the Court assumed, dehors the record, that the defendant who had not been a party to the first suit had actually controlled that suit), the Court went on to say, at page 615 of 177 Md.:

" 'The rule of mutuality is itself based upon policy and practical necessity and justice, as is the whole doctrine of *res judicata,* and on the same grounds of policy and justice there would be no objection to departing from it where the party affected has been given an adequate opportunity to be heard, either personally or by representation.' "

Judge Levine found that Elizabeth Lingo had been advised of the fact that she had been sued with her husband in Montgomery County, and held:

"that it is not necessary, in order for the doctrine of res judicata to be invoked, that in this case, Mrs. Lingo had been either served or present and participated in the proceedings, but sufficient that she had notice as it appears she did, from the record, in which event, had

the decision of Judge Mathias gone the other way she would have been barred and plaintiff would have been entitled to judgment by reason of the same doctrine; and, based on the doctrine of mutuality of estoppel, that although the decision went the other way that the plaintiff is nevertheless barred by res judicata, and will grant the motion to quash."

He, in effect, followed the line of cases (such as *Messick, Ugast v. LaFontaine,* and *Baker v. Cooper,* all cited earlier) holding that one not a stranger to the first judgment, who could have defended, is sufficiently bound by the first judgment for there to be mutuality of estoppel in a subsequent case.

Elizabeth concurs in the result reached by Judge Levine but feels that he was right for a reason better and more apposite than the one he gave. She argues that this is a situation in which Perusse lost its first case in a competent court which had jurisdiction of the parties and the subject matter on the one controlling issue, and therefore, as a matter of public policy, it should not be allowed to relitigate that same decisive issue. Perusse claims that in no event could res judicata apply, since Elizabeth was a stranger to the first proceeding and Maryland requires mutuality of estoppel.

We agree with Elizabeth's view. In *State of Maryland v. Capital Airlines, Inc.,* 267 F. Supp. 298, 303, 304 (D. Md. 1967), plaintiffs relied on a prior judgment of the District Court for the District of Columbia as res judicata, despite a lack of mutuality. Judge Northrop, while saying that the effect of the District judgment was to be determined under the law of the District (his belief was that the law of Maryland and the law of the District on the point, although as yet specifically undeclared, were the same), held for the plaintiffs on the point. He said that:

"The parties agree that there are no Maryland or District of Columbia cases squarely on point. As the Fourth Circuit said in Graves v. Associated Transport, Inc., 344 F. 2d 894, at 896 (1965), it thus becomes the duty of the court to take 'into account not merely the generalizations and the dicta in cases from years

past but also trends in modern legal thought' which we think would be accepted by either the Maryland Court of Appeals or the District of Columbia Court of Appeals.

"If this case had been presented to either of those courts even as much as ten years ago, there is little doubt that the plaintiffs could not have used the District of Columbia cases to estop collaterally the United States from denying its negligence because both the Court of Appeals of Maryland and the Court of Appeals for the District of Columbia adhered to the proposition that mutuality was required in order to invoke the doctrine of collateral estoppel. * * * The Fourth Circuit in *Graves* pointed out however that the mutuality rule had been breached before and that mutuality as an element of collateral estoppel has been subjected to much criticism by modern authority.

"This court looks with favor on the modern trends in this area. * * * There seem to be no compelling reasons for requiring that the party asserting the plea of collateral estoppel, even affirmatively as in this case, must have been a party, or in privity with a party, to the earlier litigation. * * * Indeed, the philosophical basis for the doctrine of collateral estoppel is that a party should have a full and fair day in court to be heard on the issue but should not be able to litigate that issue ad nauseam. There must be an end to litigation at some point. In view of the crowded dockets of the courts today, ancient principles must give way to principles based on today's realities so long as these new principles do not deprive a litigant of his day in court. In formulating a principle of law, a court does not sit in a vacuum. Rather, it must weigh the rights of an individual litigant with the rights of society. In coming to its conclusion, the court has taken into account not only the right of society to have its courts render justice as inexpensively as possible and the right of each litigant to have his day in court, but also the rights of other litigants who might have to wait to

have their day in court because one litigant is allowed to litigate the same issue over and over again. Four questions must be answered in the affirmative in order for the doctrine of collateral estoppel to be applicable. Three of them were formulated by Justice Traynor in *Bernhard,* supra, 122 P. 2d at 894-895 'Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?' Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

\* \* \*

"It would seem to this court that as long as the party against whom the judgment was sought to be used had a full and fair opportunity to be heard on the issue there would be no constitutional impediment to the application of the doctrine of collateral estoppel where there was no mutuality. All that due process requires is that 'the thing to be litigated was actually litigated in a previous suit, final judgment entered, and the party against whom the doctrine is to be invoked had full opportunity to litigate the matter and did actually litigate it.' United States v. United Air Lines, Inc., supra, 216 F. Supp., at 726."

We have concluded that Judge Northrop was clairvoyant in his prediction as to the view this Court would take on mutuality of estoppel in a proper case. Perusse, in its suit against Ted, had its full day in court and full opportunity to win on its claim that it procured a buyer ready, willing and able to buy at the seller's price. Its claim was decided against it. There can be no doubt that it sought to relitigate that precisely identical issue in the attachment against Elizabeth. Public policy against repetitive identical litigation, which underlies the rule of res judicata, applies here with logic and force to provide that Perusse's rights were satisfied by having had its day in court on an issue, and that it is not entitled to another day in court against a particular defendant on that issue.

Perusse suggests that it could perhaps try a better case against Elizabeth than it did against Ted. This argument, and the argument that there were errors in the conduct and the result of the trial which led to the first judgment, have been held to be unavailing where res judicata is applicable. *Snodgrass v. Stubbs,* 192 Md. 287, 291; *De Maio v. Lumbermens Mutual,* 247 Md. 30.

The order quashing the attachment will be affirmed.

*Order affirmed, with costs.*