**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 22, 2004**

FRANK MONAT,

    Plaintiff-Appellee,

v                                  No. 121122

STATE FARM INSURANCE COMPANY,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal in this case to examine the mutuality requirement of the doctrine of collateral estoppel. In this first-party, no-fault action, defendant seeks to invoke collateral estoppel to preclude plaintiff from relitigating an issue already decided in plaintiff's third-party negligence action. Due only to a lack of mutuality, the Court of Appeals, in a split decision, affirmed the trial court's denial of defendant's motion for summary disposition. We hold that, where collateral estoppel is being asserted defensively against a party who

has already had a full and fair opportunity to litigate the issue, mutuality is not required. Further, because we believe that this test has been satisfied, we reverse the decision of the Court of Appeals, remand this case to the trial court, and order that court to grant defendant's motion for summary disposition.

## I. BACKGROUND

While stopped at a traffic light, plaintiff's vehicle was rear-ended by another vehicle. Plaintiff claims to have suffered serious injuries as a result of this accident. Defendant, plaintiff's no-fault insurer, paid personal injury protection (PIP) benefits, but stopped paying such benefits shortly after plaintiff filed a third-party negligence action against the driver of the other vehicle. Plaintiff then filed this first-party action against defendant for PIP benefits.

The third-party action proceeded to trial, where, prior to trial, both parties entered into an agreement to forgo their opportunity to appeal in lieu of plaintiff agreeing to place a cap on damages and defendant agreeing to pay plaintiff an undisclosed sum of damages regardless of the jury's verdict. That trial ended with a "no cause of action" verdict after the jury specifically found plaintiff not to have been injured. Following this verdict, defendant moved for summary disposition in the

2

first-party action. Defendant asserted that the doctrine of collateral estoppel precluded plaintiff's first-party claim because plaintiff litigated and lost the issue of injury in the third-party action. The trial court denied defendant's motion.

The Court of Appeals, in a split opinion, affirmed the trial court's decision.[1] The majority concluded that the doctrine of collateral estoppel could not apply because mutuality of estoppel was absent. The dissenting judge, however, opined that the mutuality requirement should be relaxed in cases such as this and, thus, would have applied the doctrine of collateral estoppel.

## II. STANDARD OF REVIEW

A trial court's decision to grant or deny a motion for summary disposition is reviewed de novo. *Stanton v Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002).

## III. ANALYSIS

Under the no-fault act, defendant is obligated to pay plaintiff benefits for "bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle . . . ." MCL 500.3105(1). Defendant asserts that the doctrine of collateral estoppel applies, and thus it is not

---

[1] Unpublished opinion per curiam, issued February 15, 2002 (Docket No. 222690).

3

liable to pay plaintiff PIP benefits because plaintiff was found not to have been injured in the third-party action.

Generally, for collateral estoppel to apply three elements must be satisfied: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full [and fair] opportunity to litigate the issue";[2] and (3) "there must be mutuality of

_____

[2] In determining whether a party has had a "full and fair" opportunity to litigate an issue, courts should look to the factors set forth in 1 Restatement Judgments, 2d, ch 3, Former Adjudication, §§ 28-29. Section 28, p 273, provides:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of

4

persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Section 29, p 291, provides:

A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:

(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;

(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

5

estoppel." *Storey v Meijer, Inc,* 431 Mich 368, 373 n 3; 429 NW2d 169 (1988). "[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, '[t]he estoppel is mutual if the one taking

> (4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
>
> (5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
>
> (6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interest of another party thereto;
>
> (7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
>
> (8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

We note further that the United States Supreme Court has observed in this regard as follows:

> Determining whether a [party] has had a full and fair chance to litigate [an issue] in an earlier case is of necessity not a simple matter [because] . . . as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, [the] decision will necessarily rest on the trial courts' sense of justice and equity. [*Blonder-Tongue Laboratories, Inc v Univ of Illinois Foundation*, 402 US 313, 333-334; 91 S Ct 1434; 2 L Ed 2d 788 (1971).]

6

advantage of the earlier adjudication would have been bound by it, had it gone against him.'" *Lichon v American Universal Ins Co*, 435 Mich 408, 427; 459 NW2d 288 (1990), quoting *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37, 43; 191 NW2d 313 (1971).

Plaintiff has had a full and fair opportunity to litigate the issue concerning his alleged injury. The general rule permits relitigation when "[t]he party against whom preclusion is sought could not, *as a matter of law*, have obtained review of the judgment in the initial action . . . ." Restatement § 28(1)(emphasis added). Here, however, plaintiff voluntarily surrendered his opportunity for appellate review, to which he had been entitled as a matter of law. See, e.g., *Greenleaf v Garlock, Inc*, 174 F3d 352, 359 (CA 3, 1999). Plaintiff, who has been represented by counsel throughout the entire litigation process, agreed prior to trial of the third-party action to forgo his opportunity for appeal the jury's verdict in lieu of the third-party defendant agreeing to pay plaintiff an undisclosed sum of damages regardless of such verdict. This is, we believe, properly understood as a waiver of any appeal. While the "full and fair opportunity to litigate" normally encompasses the opportunity to both litigate and appeal, plaintiff here voluntarily relinquished the opportunity to pursue an appeal in return for

consideration—the guaranteed receipt of a minimal sum of damages regardless of the jury's verdict. Further, plaintiff's decision to forgo any appeal was a wise tactical decision because, as a result of this agreement, plaintiff received an undisclosed sum of damages even though the jury concluded that he had suffered no injury.[3] While this agreement guaranteed that plaintiff would receive such damages regardless of the jury's verdict, there remained nonetheless the possibility that the jury might have awarded a greater award. This possibility afforded sufficient incentive for plaintiff's vigorous advocacy regarding the injury question in the initial litigation. Moreover, to describe this type of agreement as anything other than "full and fair" would be to encourage a plaintiff to negotiate away appeals with one defendant while keeping in suspense other lawsuits in the event that plaintiff's first lawsuit proves unsuccessful.

Overlooking, however, the fact that plaintiff has had a full and fair opportunity to litigate the injury issue in

---

[3] In response to plaintiff's attorney's assertion that plaintiff "should not be punished just because he entered into a settlement to his benefit," the trial court responded that, in light of this agreement, plaintiff "was the happiest guy on earth when he heard the jury speak. So was his lawyer."

this case,[4] the dissent accepts plaintiff's argument that he is now entitled to *another* full and fair opportunity to litigate exactly the same issue *only* because mutuality of estoppel does not exist. As asserted by the dissent, the general rule supports such an argument—collateral estoppel precludes relitigation and imposes "'a state of finality to litigation where the *same parties* have previously had a full and fair opportunity to adjudicate their claims.'" *Post* at 2, quoting *Nummer v Dep't of Treasury*, 448 Mich 534, 541; 533 NW2d 250 (1995).

However, as the dissent acknowledges, there is a modern trend among the states to recognize exceptions to the mutuality requirement. Moreover, contrary to the

---

[4] Although the dissent fails to identify *any* reason why it believes plaintiff here did not have a "full and fair opportunity" to litigate the injury issue in the prior case, the dissent nonetheless criticizes the second prong of the majority's test, stating that any method used to determine whether a party against whom collateral estoppel is asserted defensively had a full and fair opportunity to litigate the issue in a prior case is based on an "'*ad hoc* formulation of . . . innumerable and unmanageable factors.'" *Post* at 5, quoting *Howell, supra* at 51. While we agree that a court must "proceed cautiously" when determining whether this prong has been satisfied, 47 Am Jur 2d, Judgments, § 651, p 60, quoting *McCoy v Colonial Baking Co, Inc*, 572 So 2d 850, 854 (Miss, 1990), we do not believe that the factors set forth in the Restatement are "innumerable or unmanageable" as evidenced by the fact that not only has the dissent failed to identify *any* reason it believes such factors are "innumerable and unmanageable," but the numerous courts that have repeatedly applied these factors have never found them "innumerable and unmanageable." See 47 Am Jur 2d, Judgments, §§ 651-652, pp 59-68.

9

dissent, this Court has not "consistently and explicitly declined the invitation to follow the modern trend" of abandoning, in part, the mutuality requirement. *Post* at 4.[5] Rather, we have expressly recognized that "lack of mutuality does not always preclude the application of collateral estoppel. There are several well-established

_____

[5] Although the dissent cites *Howell* for the proposition that this Court has refused to abandon any part of mutuality of estoppel, *post* at 4-5, this Court in *Howell* only refused to abandon mutuality of estoppel where collateral estoppel was asserted *offensively*. *Howell, supra* at 48. In fact, it appears that, had this Court in *Howell* been presented with the issue raised here regarding defensive use of collateral estoppel, the Court may well have abandoned mutuality of estoppel where it is asserted defensively against a party who has already had a full and fair opportunity to litigate the issue in a prior suit:

> Although there may be merit to Justice Traynor's observation in *Bernhard* [v *Bank of American Nat'l Trust & Savings Ass'n*, 19 Cal 2d 807; 122 P2d 892 (1942)] that the well-recognized exceptions to the mutuality rule in effect produce the same result as unilateral estoppel or non-mutuality, it should be noted that the recognized exceptions are confined to *defensive* pleading of collateral estoppel . . . . This fact is quite significant in determining whether collateral estoppel should or should not apply . . . "The courts are more inclined to permit the defensive, than the offensive, use of the doctrine of collateral estoppel." [*Howell, supra* at 47 n 7 (citation omitted).]

We believe the clear import of *Howell* is to allow defensive collateral estoppel where mutuality does not exist. Indeed, a reading of *Howell* makes any other conclusion difficult, given that the Court there said that the fact of whether collateral estoppel is pleaded offensively or defensively "is quite significant." *Id*. If mutuality were *always* required, the manner of pleading collateral estoppel would be of no significance.

10

exceptions to the mutuality requirement, such as when an indemnitor seeks to assert in its defense a judgment in favor of its indemnitee, or where a master defends by asserting a judgment for a servant." *Lichon, supra* at 428 n 16.[6]

Although the circumstances of the instant case are distinct from those addressed in *Lichon*, we now expand the exceptions to the requirement of mutuality of estoppel to encompass these circumstances. In our judgment, allowing the defensive use of collateral estoppel in these circumstances would enhance the efficient administration of justice and ensure more consistent judicial decisions.

As early as 1942, the California Supreme Court abandoned mutuality of estoppel altogether on the ground that "it would be unjust to permit one who has had his day in court to reopen identical issues . . . ." *Bernhard v*

---

[6] Because the Court in *Lichon* held that "collateral estoppel [was] unavailable to [defendant] because the issue . . . was never actually litigated," *Lichon, supra* at 428, we believe that, whatever we said in *Lichon* concerning mutuality, was dictum. Further, in accord with our analysis of *Howell*, n 5, what the Court in *Lichon* said concerning mutuality was in error because the Court in *Howell* did not generally reaffirm its commitment to mutuality.

11

*Bank of America Nat'l Trust & Savings Ass'n*, 19 Cal 2d 807, 813; 122 P2d 892 (1942).[7]  In *Bernhard*, the court stated:

> The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted.  The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided.  He is bound by that litigation only if he has been a party thereto or in privity with a party thereto.  There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation. [*Id*. at 811-812 (citations omitted).]

The United States Supreme Court in *Blonder-Tongue Labs, Inc v Univ of Illinois Foundation*, 402 US 313, 323-324; 91 S Ct 1434; 2 L Ed 2d 788 (1971), relied extensively on the *Bernhard* reasoning in holding that mutuality is not required where collateral estoppel is asserted defensively and where the plaintiff has already had a full and fair opportunity to litigate the issue.  The Court stated:

> The courts have often discarded the rule while commenting on crowded dockets and long delays preceding trial.  Authorities differ on whether the public interest in efficient judicial administration is a sufficient ground in and of itself for abandoning mutuality, but it is clear that more than crowded dockets is involved.  The broader question is whether it is any longer tenable to afford a litigant more than one full

---

[7] Because this case does not involve the offensive use of collateral estoppel, we express no opinion as to whether *Bernhard* was correct in its abandonment of mutuality in both the context of its offensive and defensive use.

and fair opportunity for judicial resolution of the same issue. The question in these terms includes as part of the calculus the effect on judicial administration, but it also encompasses the concern exemplified by Bentham's reference to the gaming table in his attack on the principle of mutuality of estoppel.[8] In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in a prior suit, the defendant's time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or "a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy and wise basis for fashioning rules of procedure." Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard. [*Id*. at 328-329 (citation omitted).]

In this state, the Court of Appeals has expressly stated that defensive use of collateral estoppel does not require mutuality. In *Knoblauch v Kenyon,* 163 Mich App

---

[8] Philosopher Jeremy Bentham had attacked mutuality of estoppel "as destitute of any semblance of reason, and as 'a maxim which one would suppose to have found its way from the gaming-table to the bench' . . . ." *Blonder-Tongue, supra* at 322-323 (citations omitted).

712; 415 NW2d 286 (1987), plaintiff was convicted of a sex-related crime. In his direct appeal from the conviction, plaintiff claimed that his attorney rendered ineffective assistance of counsel, but the conviction was affirmed. Plaintiff then sued the attorney for legal malpractice, essentially asserting the same grounds as those alleged in his criminal appeal. As an affirmative defense, the attorney filed a motion for summary disposition asserting that collateral estoppel barred the subsequent litigation. The trial court agreed and granted the attorney's motion, and the Court of Appeals affirmed, holding that mutuality of estoppel was not required where: (1) collateral estoppel was being asserted defensively and (2) the plaintiff had an opportunity to litigate the issue in a prior proceeding. *Knoblauch, supra* at 725.[9]

Persuaded by the reasoning of *Knoblauch* and of the countless other courts that have adopted a similar test,[10]

---

[9] This rule has been followed in subsequent decisions of the Court of Appeals. See *Alterman v Provizer*, 195 Mich App 422, 424-425; 491 NW2d 868 (1992); *Schlumm v Terrance J O'Hagan, PC*, 173 Mich App 345, 357; 433 NW2d 839 (1988).

[10] See, e.g., *Adriaanse v United States*, 184 F2d 968 (CA 2, 1950); *Bruszewski v United States*, 181 F2d 419 (CA 3, 1950); *Graves v Associated Transport, Inc*, 344 F2d 894 (CA 4, 1965); *Davis v McKinnon & Mooney*, 266 F2d 870 (CA 6, 1959); *Federal S&L Ins Corp v Hogan*, 476 F2d 1182 (CA 7, 1973); *Fisher v Jones*, 311 Ark 450; 844 SW2d 954 (1993); *Murphy v Northern Colo Grain Co*, 30 Colo App 21; 488 P2d 103 (1971); *Aetna Cas & Surety Co v Jones*, 220 Conn 285; 596 A2d 414 (1991); *Coca-Cola Co v Pepsi Cola Co*, 172 A 260

we believe that the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit. Such a belief is supported by the Restatement of Judgments. "A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless . . . he lacked full and fair opportunity to litigate the issue in the first action . . . ." 1 Restatement Judgments, 2d, ch 3, § 29, p 291. "A party who has had a full and fair opportunity to litigate an issue has been accorded the elements of due process. There is no good reason for refusing to treat the issue as settled so

(Del Super, 1934); *Ellis v Crockett*, 51 Hawaii 86; 451 P2d 814 (1969); *Anderson v Pocatello*, 112 Idaho 176; 731 P2d 171 (1986); *White v Allstate Ins Co*, 605 NE2d 141 (Ind, 1992); *Pat Perusse Realty Co v Lingo*, 249 Md 33; 238 A2d 100 (1968); *Home Owners Fed S&L Ass'n v Northwestern Fire & Marine Ins Co*, 354 Mass 448; 238 NE2d 55 (1968); *Gammel v Ernst & Ernst*, 72 NW2d 364 (Minn, 1955); *Thomas M McInnis & Associates, Inc v Hall*, 318 NC 421; 349 SE2d 552 (1986); *Sanderson v Balfour*, 109 NH 213; 247 A2d 185 (1969); *Silva v State*, 106 NM 472; 745 P2d 380 (1987); *Ettin v Ava Truck Leasing, Inc*, 53 NJ 463; 251 A2d 278 (1969); *Posternack v American Cas Co*, 421 Pa 21; 218 A2d 350 (1966); *Black Hills Jewelry Mfg Co v Felco Jewel Industries Inc*, 336 NW2d 153 (SD, 1983); *Crowall v Heritage Mut Ins Co*, 118 Wis 2d 120; 346 NW2d 327 (1984). See also anno: *Mutuality of estoppel as prerequisite of availability of doctrine of collateral estoppel to a stranger to the judgment*, 31 ALR3d 1044, § 4, pp 1072-1073; 47 Am Jur 2d, Judgments, § 648, pp 54-55; 18 Moore's Fed Practice (3d ed), Issue preclusion and collateral estoppel, § 132.04[2][b]-[c][ii], pp 156-162.

far as he is concerned other than that of making the burden of litigation risk and expense symmetrical between him and his adversaries." Judgments, p 292, comment b. In circumstances where mutuality is required and where collateral estoppel is asserted defensively, the mutuality requirement only encourages gamesmanship by a plaintiff.[11] See n 8. A party is entitled to his day in court on a particular issue, and is not entitled to his day in court against a particular adversary. 31 ALR3d 1044, § 4, p 1068.

The doctrine of collateral estoppel is intended "'to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication . . . .'" *Detroit v Qualls*, 434 Mich 340, 357 n 30; 454

---

[11] Because nonparties, such as defendant, receive no notice of third-party actions and thus are generally unaware of such actions, we are perplexed as to how "abandoning the mutuality requirement under these circumstances would . . . reward *defendant's* gamesmanship." *Post* at 9 (emphasis added). If plaintiff believed, as the dissent contends, that defendant, by not requesting to be joined in the third-party action, was employing "gamesmanship," plaintiff had the authority to attempt to join defendant. MCR 2.206(A)(1). However, because "there are rarely tactical reasons for refraining from joining all potential defendants," we believe that it was *plaintiff* who, by choosing not to attempt to join defendant as a party was employing "gamesmanship" and was planning to use the instant action, if necessary, "merely [as] a renewal of [his] previously unsuccessful effort." 1 Restatement Judgment, 2d, ch 3, § 29, p 301 reporter's note. See also *Ritchie v Landau*, 475 F2d 151, 156 n 5 (CA 2, 1973).

16

NW2d 374 (1990), quoting *Allen v McCurry*, 449 US 90; 101 S Ct 411; 66 L Ed 2d 308 (1980). By refusing to adopt the majority's test, the dissent does nothing to preserve the underpinnings of collateral estoppel. The dissent would require defendants to relitigate previously adjudicated issues;[12] it would require the judicial system to employ scarce resources repeatedly adjudicating the same issue; it would increase the likelihood of inconsistent decisions being rendered by the judicial process; it would promote opportunities for parties to use the judicial process in a vexatious manner; and it would require defendants to expend resources relitigating issues. Each of these effects would only weaken our judicial process.[13]

Further, the dissent, at least in part, apparently bases its position on the notion that fairness, in the context of defensive collateral estoppel, is determined

---

[12] Given that there are over sixty years of experience regarding the defensive use of collateral estoppel in the absence of mutuality, see *Bernhard, supra*, the dissent's fear that the "full and fair" standard will "open the Pandora's box," causing judicial resources to be spent litigating whether a prior adjudication was "full and fair," appears unfounded. *Post* at 7 (citation omitted).

[13] The test that we set forth today is fully consistent with our understanding of collateral estoppel as "strik[ing] a balance between the need to eliminate repetitious litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their particular claims." *Post* at 1. Such test serves both these interests without diluting either.

17

only on the basis of symmetry.  *Post* at 9-10.[14]  However, as explained in *Bruszewski v United States*, 181 F2d 419 (CA 3, 1950), the achievement of "substantial justice," rather than symmetry, is the proper measure of fairness in the context of defensive collateral estoppel:

> This second effort to prove negligence is comprehended by the generally accepted precept that a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case.

> The countervailing consideration urged here is lack of mutuality of estoppel.  In the present suit [the plaintiff] would not have been permitted to take advantage of an earlier affirmative finding of negligence, had such finding been made in [his first suit against a different defendant]. For that reason he urges that he should not be bound by a contrary finding in that case.  But a finding of negligence in [the plaintiff's first suit] would not have been binding against the [defendant in a second suit] because [that defendant] had no opportunity to contest the issue there.  The finding of no negligence on the other hand was made after full opportunity to [the plaintiff] on his own election to prove the very matter which he now

---

[14] "[W]e should firmly keep in mind that we are considering the situation where the [plaintiff] was plaintiff in the prior suit and chose to litigate at that time and place.  Presumably, he was prepared to litigate and to litigate to the finish against the defendant [involved in the prior suit].  [Accordingly,] there is no reason to suppose that [the plaintiff] would face either surprise or unusual difficulties in getting all relevant and probative evidence before the court in the first litigation." *Blonder-Tongue, supra* at 332.

18

urges a second time.  Thus, no unfairness results here from estoppel which is not mutual.  In reality the argument of [the plaintiff] is merely that the application of res judicata in this case makes the law asymmetrical.  But the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata.  [*Id.* at 421.]

### IV. CONCLUSION

In an effort to promote the efficient administration of justice and to ensure more consistent judicial decisions, we hold that, where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required.  Further, because both requirements of this test have been satisfied here, we reverse the judgment of both the trial court and the Court of Appeals, remand this case to the trial court, and order it to grant defendant's motion for summary disposition.[15]

> Maura D. Corrigan
> Elizabeth A. Weaver
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

---

[15] We believe that the instant decision should be given full retroactive effect because, contrary to the dissent's assertion, this decision does not "represent[] a sweeping change in the law." *Post* at 10.  Rather, there is no previous decision of this Court that has decided whether mutuality should apply in the defensive context. See ns 5-6.

**S T A T E   O F   M I C H I G A N**

SUPREME COURT

FRANK MONAT,

    Plaintiff-Appellee,

v                                                                    No. 121122

STATE FARM INSURANCE COMPANY,

    Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

In this first-party, no-fault action, defendant seeks to invoke the doctrine of collateral estoppel to preclude plaintiff from relitigating an issue decided in plaintiff's third-party negligence action. We are again called upon to examine the mutuality requirement of the doctrine of collateral estoppel as it has been traditionally applied in Michigan. Because the majority imprudently departs from this tradition, I must respectfully dissent.

The doctrine of collateral estoppel, also known as issue preclusion, strikes a balance between the need to eliminate repetitious litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their particular claims. *Storey v Meijer, Inc*, 431 Mich 368, 372-373; 429 NW2d 169 (1988). As a preclusion doctrine, collateral estoppel serves "an

important function in resolving disputes by imposing a state of finality to litigation where the *same parties* have previously had a full and fair opportunity to adjudicate their claims." *Nummer v Dep't of Treasury*, 448 Mich 534, 541; 533 NW2d 250 (1995) (emphasis added). Collateral estoppel applies when a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 399 Mich 449, 458; 249 NW2d 121 (1976); *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37, 41-42; 191 NW2d 313 (1971). In addition, Michigan law requires mutuality of estoppel. *Storey, supra* at 373 n 3; *Howell, supra* at 41-42; *Lichon v American Universal Ins Co*, 435 Mich 408, 427; 459 NW2d 288 (1990).

"[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have also been a party, or privy to a party, in the previous action." *Lichon, supra* at 427. Stated differently, "estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Howell, supra* at 43 (citations omitted). Unless *both* parties in a subsequent action are bound by a prior judgment, neither party may use that prior judgment as determinative of an issue in the subsequent action.

Until today's decision, mutuality of estoppel unquestionably remained the law in Michigan. Because defendant was not a party in the third-party action, mutuality is absent and collateral estoppel could not be invoked. Further, defendant acknowledged that had the issue of plaintiff's injury been decided unfavorably to defendant's position, it would not have been bound by the earlier judgment. Nonetheless, defendant asked this Court to either abrogate the mutuality requirement or create a new exception so that it may now use the prior judgment for its own advantage. The majority eagerly granted defendant's request and joined the so-called "modern trend."

For many years, mutuality of estoppel was the recognized rule, but the rule began to come under fire by courts in other jurisdictions. See, e.g., *Bernhard v Bank of America Nat'l Trust & Savings Ass'n*, 19 Cal 2d 807; 122 P2d 892 (1942). The modern trend has been to abandon the mutuality requirement in whole or in part. Some jurisdictions have rejected mutuality depending on whether collateral estoppel is asserted offensively or defensively. Other jurisdictions, however, have continued to adhere to

the mutuality requirement despite the modern trend.[1]

Defendant's arguments in support of yielding to the modern trend, such as preserving judicial resources, are by no means novel and have previously been rejected by this Court. In fact, this Court has consistently and explicitly declined the invitation to follow the modern trend. In 1971, this Court made a conscious decision to resist the modern trend and refused to abrogate the mutuality requirement. *Howell, supra* at 43. This Court stated:

> A more fundamental reason for declining plaintiff's invitation to abandon the requirement of mutuality is that we are not convinced that to do so would promote the ends of justice or increase efficiency in the administration of our courts. Surely, we must strike a balance between the competing interests: (a) that the litigant against whom the doctrine is asserted has had his day in court; *vis-à-vis* [sic] (b) that repetitious and needless litigation which burden our already overloaded court dockets must be

---

[1] See, e.g., *Leon C Baker, PC v Merrill Lynch, Pierce, Fenner & Smith, Inc*, 821 So 2d 158, 165 (Ala, 2001), quoting *McMillian v Johnson*, 878 F Supp 1473, 1520 (MD Ala, 1995)("'It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement.'"); *EC v Katz*, 731 So 2d 1268, 1270 (Fla, 1999)("This case falls squarely within our traditional requirement that there be mutuality of parties in order for collateral estoppel to apply defensively."); *Hofsommer v Hofsommer Excavating, Inc*, 488 NW2d 380, 384 (ND, 1992)("Although the principle of mutuality has been abandoned in numerous jurisdictions . . . , this court has applied the mutuality rule as a prerequisite to the application of collateral estoppel."); *Rawlings v Lopez*, 267 Va 4; 591 SE2d 691 (2004)(reaffirming Virginia's adherence to the principle of mutuality in the context of defensive collateral estoppel).

2

avoided. But we need not sacrifice a well-established and valuable rule to achieve this balance.

* * *

In point of fact, the abandonment of the mutuality doctrine would in many instances create more pitfalls to orderly and efficient administration of justice. [*Id*. at 48-49.]

*Howell* involved a case of offensive collateral estoppel, but it is evident that the Court was basing its commitment to the mutuality requirement on larger policy concerns. "The course of justice is best served by adherence to a long established and definitive rule which our bench and bar well recognizes rather than permit an *ad hoc* formulation of a rule based upon innumerable and unmanageable factors." *Id*. at 51. As recently as 1990, this Court expressly reaffirmed its commitment to mutuality of estoppel in a case involving defensive collateral estoppel. *Lichon*, *supra* at 427-428.

Again, the arguments in support of abrogation have been duly considered by earlier compositions of this Court. Despite these earlier decisions, the Court's current majority now finds these rehashed arguments persuasive, finding error where none had been discovered before. The doctrine of stare decisis is more than a fad and decades of precedent cannot be readily discounted as the majority suggests. "This Court has stated on many occasions that '[u]nder the doctrine of stare decisis, principles of law

3

deliberately examined and decided by a court of competent jurisdiction should not be lightly departed.'" *Brown v Manistee Co Rd Comm*, 452 Mich 354, 365; 550 NW2d 215 (1996), quoting *Boyd v W G Wade Shows*, 443 Mich 515, 525 n 15; 505 NW2d 544 (1993) (citations omitted). Moreover, this Court should "'not overrule a decision deliberately made unless [it] is convinced not merely that the case was wrongly decided, but also that less injury would result from overruling than from following it.'" *Brown, supra* at 365, quoting *Boyd, supra* at 524. I perceive no error, flagrant or otherwise, committed by this Court in our earlier decisions that specifically declined to follow the modern trend. Like the learned members who previously sat on this Court, I find defendant's rehashed arguments equally unpersuasive.

Nor am I persuaded that this Court should create a new exception to the mutuality requirement. This Court has noted several "well-established" exceptions to the mutuality requirement. *Lichon, supra* at 428 n 16. However, the relationship between plaintiff and defendant does not fit into one of these recognized exceptions. For example, an exception to the mutuality requirement has been recognized where the liability of one party is dependent on the culpability of the other party. *DePolo v Greig*, 338 Mich 703, 711; 62 NW2d 441 (1954). The relationship

4

between plaintiff and defendant as insured and insurer is simply not the type of special relationship that has traditionally formed the basis of the "well-established" exceptions.[2]

With the adoption of the majority's new formulation, the fears that this Court expressed in *Howell* are beginning to ring true. This Court stated:

> To abandon mutuality and proceed on a "full and fair hearing" standard would open the Pandora's box of problems rhetorically posed by Professor Semmel [*Collateral estoppel, mutuality and joinder of parties*, 68 Col LR 1457, 1469 (1968)]:
>
> "The real problem is what standard the court in the second action should apply if it undertakes to determine whether the first action was litigated 'with full vigor and opportunity to be heard.' Does a defendant in a small property damage claim meet the test? If he knows or has reason to fear that an adverse decision will be utilized by nonparties to the first action, he may very well proceed with greater vigor, but there is no assurance of this since insurance companies currently seek to dispose of property damage claims with the minimum of litigation expense. As the dissent in *B. R. DeWitt Inc v Hall* [19 NY2d 141, 148-149; 225 NE2d 195; 278 NYS 2d 596 (1967)] noted, how do we treat cases where the defendant has different liability insurers for personal injury claims and property damage claims? How can a judge evaluate the vigor of

---

[2] I acknowledge that the Court of Appeals has taken upon itself to create new exceptions to the mutuality requirement. See, e.g., *Alterman v Provizer, Eisenberg, Lichtenstein & Pearlman, PC*, 195 Mich App 422; 491 NW2d 868 (1992). However, as mentioned above, I am not convinced that this Court should create a new exception under these circumstances, nor do I express an opinion relating to any exceptions created by lower courts.

> litigation in a case in which he did not sit?
> How can he weigh the difficulty a defendant faced
> by being forced to litigate in one jurisdiction
> rather than another?  How did the burden of proof
> or applicable presumption affect the result?"
> [*Howell*, *supra* at 51-52 n 13.]

The majority insists that the numerous factors set forth by the Restatement will assist in determining whether an issue is fully and fairly litigated.  The majority further notes that "we do not believe that the factors set forth in the Restatement are 'innumerable or unmanageable . . . .'" *Ante* at 9 n 4.  Thus, under the majority's rationale, the fears detailed by the *Howell* Court are necessarily unfounded.

In its next breath, however, the majority then concludes that plaintiff's no-appeal agreement is not a situation covered by the illuminating factors set forth by the Restatement and, therefore, the majority has to resort to a waiver analysis to reach its ultimate conclusion that plaintiff fully and fairly litigated the injury issue in the third-party action.  The majority acknowledges that the full and fair opportunity analysis is not an easy endeavor and courts should "proceed cautiously." *Ante* at 7 n 3.  As a practical matter, however, considerable judicial resources will be spent litigating the full and fair opportunity prong.  Thus, the facts of this case illustrate the idea that judicial economies will not be achieved under

6

the majority's new approach, an idea previously acknowledged by the *Howell* Court.

Further, abandoning the mutuality requirement under these circumstances would undermine the purpose of the rule and reward defendant's gamesmanship.[3] Rather than continuing to pay benefits under the policy and intervene in the third-party action, defendant elected to stop making payments, thereby compelling plaintiff to expend judicial resources by bringing a first-party action. Defendant consciously made this decision because it knew that if plaintiff were found to be injured in the third-party action, it would not be bound by that judgment and could relitigate the injury issue. Alternatively, if plaintiff was not found to be injured, defendant could then assert the defense of collateral estoppel, cast plaintiff in a negative light, and play the odds that this Court would step in line and abrogate the mutuality requirement. The majority willingly conformed and even rewarded such maneuvering by inexplicably giving defendant the benefit of the new rule of law.

---

[3] The majority asserts that first-party, no-fault insurers, as nonparties, are generally unaware of third-party actions involving their insureds. Yet, I find it telling that *this* defendant stopped paying benefits a short time after plaintiff filed the third-party action rather than simply denying plaintiff's claim in the first place.

In general, "'judicial decisions are to be given complete retroactive effect.'" *Michigan Educational Employees Mut Ins Co v Morris*, 460 Mich 180, 189; 596 NW2d 142 (1999) (citations omitted). This Court, however, has considered prospective or limited retroactive application where well-established law has been changed. *Id*. In resolving the "retroactive-prospective dilemma," this Court weighs "'(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.'" *Id*. at 190 (citations omitted). The majority opinion represents a sweeping change in the law. Until today's decision, mutuality remained the law in Michigan. In light of the bench and bar's heavy reliance on the mutuality requirement, mutuality's storied history, and the notion that the new rule is unlikely to achieve its stated purpose, I am unclear with regard to how the majority can justify applying the rule of law announced in today's decision to this particular defendant.

In sum, I am unwilling to abrogate the mutuality requirement in the application of collateral estoppel. I remain unconvinced that the judicial economies the majority claims are achieved by abrogation are sufficient to override concerns about the fairness afforded to litigants. The mutuality requirement already strikes an evenhanded

balance between these competing interests.  Accordingly, I respectfully dissent.

                                    Michael F. Cavanagh
                                    Marilyn Kelly